IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TAMMY L. WHITLOCK,

                Plaintiff,                                    CV-10-357-AC

     v.                                            FINDINGS AND

                                             RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                    Defendant.

ACOSTA, Magistrate Judge:

      Plaintiff Tammy Whitlock appeals the Commissioner's decision denying her applications for

disability insurance benefits and supplemental security income payments under Titles II and XVI of

the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's

decision should be affirmed.

      Whitlock alleges she became disabled January 1, 2006, due to chronic back pain from

degenerative disc disease and depression. (Admin. R. 126, 131.) The administrative law judge

("ALJ") applied the sequential disability determination process described in 20 C.F.R. §§ 404.1520

1 - FINDINGS AND RECOMMENDATION

and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Whitlock's ability to work affected by an undifferentiated somatoform disorder, antisocial personality disorder, amphetamine dependence, alcohol dependence, cannabis dependence, degenerative disc disease of the lumbar spine, and a history of carpal tunnel syndrome. (*Id.* at 12.) The ALJ found that despite her impairments, Whitlock retained the residual functional capacity ("RFC") to perform work at the light level of exertion with no more than occasional stooping, involving only simple instructions of no more than two steps and minimal contact with the general public. (*Id.* at 14.) The vocational expert ("VE") identified jobs existing in significant numbers in the national economy that a person having Whitlock's vocational factors and RFC could perform. (*Id.* at 18, 36-37.) The ALJ concluded that Whitlock had failed to prove she was disabled within the meaning of the Social Security Act. (*Id.* at 19.)

The court reviews that decision to ensure that proper legal standards were applied and the findings of fact are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Whitlock contends the case must be remanded because her waiver of representation was invalid and the ALJ failed to re-contact one of her treating sources. Whitlock contends the ALJ's RFC assessment is flawed because he failed to properly evaluate the lay witness statement and to comply with rules governing the evaluation of mental impairments. She contends the testimony of the VE did not support the ALJ's conclusion that Whitlock is not disabled.

## I.    Waiver of Representation

Whitlock contends the ALJ erroneously failed to obtain a valid waiver of representation when she appeared at the administrative hearing without a representative. Whitlock received a number of

separate written notices of her right to have representation, including information about help finding

legal services. (Admin. R. 46, 49, 55, 61, 64, 89.)  In addition, at the beginning of the administrative

hearing, the ALJ gave her notice of that right orally and on the record.

> ALJ:         I have to tell you that you have a right to have a representative
> here at the hearing, so you have two choices.  You can either
> request the postponement of this hearing this morning so that
> you can get a representative, or we can go ahead with the
> hearing this morning if you waive that right.  What do you
> want to do at this time?
>
> CLMT:       I'll waive it, because I'm tired of trying to find a lawyer.

(Admin. R. 26.)

After a thorough review of the record, the court is satisfied there was nothing improper about

Whitlock's waiver of representation.  The written notices together with the ALJ's verbal notice,

adequately informed Whitlock that she had the right to have a representative at the hearing and the

right to postpone the hearing to obtain representation.  Nothing in the hearing transcript or the record

as a whole suggests that Whitlock did not understand her right to have a representative.  Whitlock

completed a high school equivalency diploma and does not allege she could not read or understand

the written notices she received.  She unequivocally waived her right to representation and rejected

the ALJ's offer to postpone the hearing.  The court concludes Whitlock did so knowingly and

intelligently. *Roberts v. Comm'r of the Soc. Sec. Admin.*, ___ F.3d ___, 2011 WL 1998337 (9th Cir.

May 24, 2011).

Whitlock argues the ALJ violated the Commissioner's policy provisions described in the

Hearings, Appeals and Litigation Law Manual ("HALLEX").  This argument cannot be sustained.

HALLEX is a purely internal manual that does not provide substantive rules.  It is strictly an internal

guidance tool, providing policy and procedural guidelines for ALJs and other agency staff. It does not carry the force and effect of law and does not bind the ALJs. The court does not review allegations of noncompliance with internal guidance manuals such as HALLEX. *Roberts*, 2011 WL 1998337, *1; *Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007); *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000), *citing Schwieker v. Hansen*, 450 U.S. 785, 789 (1981).

## II.    **Development of the Record**

The absence of counsel does not affect the validity of an administrative hearing unless the claimant demonstrates prejudice or unfairness in the proceedings. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985); *Hall v. Sec'y of Health, Educ., & Welfare,* 602 F.2d 1372, 1378 (9th Cir. 1979). An ALJ has a duty to conscientiously explore all the relevant facts at the hearing so as to protect the interests of the unrepresented claimant. *See Vidal v. Harris,* 637 F.2d 710, 713 (9th Cir. 1981)(ALJ did not fully develop the record where the unrepresented claimant could not read and had mental retardation and these limitations were not included in the questions to the VE). If the ALJ fails to do so and the unrepresented claimant demonstrates prejudice, the case must be remanded in the interests of justice. (*Id.* at 714-15.)

Here, the ALJ inquired about all of Whitlock's alleged symptoms, impairments, and medical treatments and gave Whitlock the opportunity to provide any additional information about her impairments. (Admin. R. 28-33.) The record reflects that Whitlock participated in the hearing and responded to the ALJ's questions in a manner that demonstrates she understood him. Whitlock indicated she did not fully understand the vocational testimony, but does not offer a persuasive argument as to how this resulted in prejudice. The ALJ elicited testimony from the VE with hypothetical assumptions based on the functional limitations he found supported by the record. (*Id.*

at 34-38.) Whitlock does not identify hypothetical questions the ALJ neglected to ask the VE or any other basis from which the court could conclude that the absence of representation made the vocational testimony prejudicial or unfair.

Whitlock alleges she was prejudiced by her lack of counsel because the ALJ failed to properly develop the record. Whitlock argues the ALJ should have re-contacted Rebecca Vose, a certified physician's assistant who treated Whitlock between March and December 2008. Whitlock contends the ALJ should have re-contacted Vose for comments on any possible functional limitations resulting from her impairments. The ALJ found that no treating source, including Vose, had indicated Whitlock was disabled, unable to work, or had limitations in excess of those in the RFC assessment he reached. (*Id.* at 17.)

The ALJ's conclusion is supported by the record. In March 2008, Whitlock established care at the Community Health Center in Medford, Oregon, and saw Vose for the first time. Whitlock complained of neck pain but had full range of motion in the cervical spine. She alleged she had received a diagnosis of degenerative disc disease from a previous provider, but had no records or diagnostic imaging to support this. She complained of depression and wanted to re-start a prescription which reportedly had produced good results in the past. She wanted to be tested for hepatitis C. Whitlock denied intravenous drug use, despite visible track marks on her arms. She said that she smoked marijuana and drank hard alcohol when she had enough money to obtain it. Vose found no overt signs of depression or anxiety. Vose diagnosed a neck sprain, depression, alcoholism, and substance abuse. (*Id.* at 283-84.) In April 2008, Vose saw Whitlock to confirm that her hepatitis C test result was strongly positive. Vose prescribed Trazadone to help with sleep difficulties and advised Whitlock to abstain from alcohol. (*Id.* at 235, 286-87.)

In August 2008, Vose saw Whitlock again for complaints of neck and back pain. Whitlock reported her depression and insomnia were improved with medications. Vose observed no psychological symptoms, noting Whitlock was alert, oriented, cooperative, and presented no evidence of depression or anxiety. Her mood and affect were congruent and her thought processes normal. Vose denied Whitlock's request to start narcotic pain management because Whitlock's earlier providers had not produced diagnostic imaging to support her reported diagnosis of degenerative disc disease and because Whitlock had not undergone prerequisite substance abuse evaluation. (*Id.* at 280-81.)

In October 2008, Whitlock returned to see Vose for abscesses in the axilla. Whitlock still had not undergone substance abuse evaluation or obtained diagnostic imaging from her earlier providers and was again denied narcotic pain management. (*Id.* at 279.) On October 21, 2008, Whitlock presented for evaluation by a substance abuse treatment program to assess her pain management options. Whitlock then decided not to proceed with drug and alcohol treatment or with narcotic pain management. Instead, she indicated she would continue to smoke marijuana to address her chronic pain. (*Id.* at 299-300.) At her last appointment with Vose, in December 2008, Whitlock had not followed through with substance abuse evaluation and Vose had not received satisfactory imaging to support the diagnosis Whitlock claimed. (*Id.* at 310.)

An ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir 2001); 20 C.F.R. §§ 404.1512(e), 416.912(e). Whitlock has not identified any ambiguity in the progress notes of Vose or in the record as a whole. The ALJ did not find the evidence inadequate to assess Whitlock's RFC or to determine that she is not

disabled within the meaning of the Social Security Act. Accordingly, the ALJ had no duty to re-contact Vose for additional opinion evidence. The ALJ obtained the evidence available from all the treating sources Whitlock identified. In doing so, he fulfilled his duty to develop the record.

## III.    Lay Witness Statement

In January 2008, Whitlock's father, Harold Nickens, submitted a written statement. Nickens indicated that he was not aware of Whitlock's activities of daily living. (Admin. R. 158.) He said Whitlock had no problem with her own personal care and prepared simple meals and performed basic house work on a daily basis. (*Id.* at 159-60.) She did not perform yard work because there was none. (*Id.* at 161.) Nickens said Whitlock was able to go outside to walk and could drive and shop and handle money. (*Id.*) Nickens indicated Whitlock could not follow instructions very well and had difficulty handling stress. (*Id.* at 164.) He placed check marks indicating that Whitlock's ability in each of 19 listed functions, such as lifting, walking, talking, hearing, seeing, understanding, and so forth, were affected in an unspecified way and to an unspecified degree by unspecified illnesses, injuries, or conditions. (*Id.* at 163.)

The ALJ did not mention Nickens's written statements in his decision. An ALJ must consider lay witness statements concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay statements as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the statements of a lay witness, he must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

The limitations in Nickens's statement were vague and general and lacked specificity with respect to how they affected Whitlock's ability to work   Nickens did not identify work-related activities that Whitlock could not do.  The closest Nickens approached an identifiable work-related limitation was when he indicated Whitlock has difficulty following instructions.   The ALJ reasonably accommodated this limitation in his RFC assessment by excluding all work except jobs requiring only simple instructions of no more than two steps.  In summary, it does not appear that the ALJ discredited any part of Nickens's lay witness statement in assessing Whitlock's RFC. Because he did not discount the lay witness statement, the ALJ did not err by failing to provide an explanation for doing so.

**IV.    Mental Residual Functional Capacity**

Whitlock contends the ALJ did not properly assess her mental residual functional capacity. Whitlock correctly states that the ALJ is required to use a psychiatric review technique prescribed in the regulations to determine whether a claimant has mental impairments of sufficient severity to require a determination of her mental residual functional capacity.   20 C.F.R. §§ 404.1520a, 416.920a. The ALJ did so, relying on the Psychiatric Review Technique Form ("PRTF") completed by Dorothy Anderson, Ph.D.  (Admin. R. 13, 250-61.)

The Commissioner uses the PRTF at steps two and three of the decision-making process to determine whether a claimant has mental impairments that more than minimally affect her ability to work and whether the mental impairments are equivalent to any of the presumptively disabling conditions in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.  To make those determinations, the PRTF addresses broad categories of function, including "Difficulties in Maintaining Concentration, Persistence, or Pace."  (Admin. R. 260.)  Dr. Anderson indicated

Whitlock had moderate impairment in this broad category of function. (*Id.*) Whitlock argues that the ALJ did not reflect this limitation accurately in his assessment of her RFC.

For the RFC assessment, the Commissioner does not use the broad categories of function on the PRTF. Instead, those broad categories are broken into 20 specific work-related abilities which are contained on the standard Mental Residual Functional Capacity ("MRFC") form. Dr. Anderson completed an MRFC form and the ALJ adopted her findings. (*Id.* at 16, 272-75.) In breaking down Whitlock's moderate difficulties in the broad category of maintaining concentration, persistence, or pace, into work related limitations, Dr. Anderson said:

> The [claimant] also shows the inability to maintain concentration for
> extended periods of time, however as long as the [claimant] is given
> [occasional] rest breaks (every couple of hours), the [claimant] shows
> the ability to sustain concentration for an 8 hour workday.

(*Id.* at 274.)

Dr. Anderson's conclusion is consistent with the ability to maintain concentration during a normal workday with normally scheduled breaks. As such, it is also completely consistent with the ALJ's RFC assessment. Accordingly, the ALJ complied with the regulatory procedure for assessing mental impairments and reached an RFC that is supported by substantial evidence in the record. The court finds no error in the ALJ's evaluation of Whitlock's mental impairments.

## V.    **Vocational Evidence**

At step five of the decision-making process, the Commissioner must show that a significant number of jobs exist which the claimant can perform despite her functional limitations. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). An ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Id.;*

*Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Here, the VE testified that a person with Whitlock's RFC and vocational factors of age, education, and work experience, could perform the work activities required in the occupations of light bench work assembler, a light hand packager, and a light laundry worker. (Admin. R. 36-37.) Whitlock challenges the vocational testimony on three grounds.

First, Whitlock argues the occupations identified by the VE require abilities exceeding her RFC assessment. Whitlock relies on the job definition in the Department of Labor publication *Dictionary of Occupational Titles* ("DOT"). For each occupation described in the DOT, there is a definition containing a lead statement which summarizes the actions involved, the purpose of the actions, the machines, tools, equipment, or materials used or services rendered, and the instructions followed or judgments made for the occupation. Each job definition then provides a description of the specific tasks the worker performs to accomplish the overall job purpose described in the lead statement. If there are duties required of workers in this occupation in some establishments but not in others, the definition describes the duties that may be required. Following this job description, auxiliary information is appended in a "definition trailer." DOT, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTPARTS.HTM. Among the various components of the definition trailer is the general education development ("GED"), which approximates the educational level the worker must have achieved for satisfactory job performance. The GED is broken down into categories for math, language, and reasoning, each expressed by numerical code. DOT, Appendix C, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM. The occupations identified by the VE have GED reasoning development codes of 2. Reasoning development at this

level means the worker can "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] deal with problems involving a few concrete variables in or from standardized situations." (*Id.*) The RFC assessment restricted Whitlock to simple instructions of no more than two steps. (*Id.* at 14, 35.)

Whitlock argues the RFC limitation to simple instructions of no more than two steps is inconsistent with the reasoning development code indicating she must be able to carry out detailed but uninvolved instructions. Notably, Whitlock does not argue that she is incapable of any of the activities, instructions to be followed, judgments to be made, specific tasks, or duties that may be required, as contained in the main descriptions of the occupations identified by the VE.

The court is not persuaded that the reasoning development code is inconsistent with the RFC assessment. On the contrary, the ability to carry out simple instructions of no more than two steps is consistent with reasoning level 2. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning appears consistent with "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed. Appx. 210, 214 (3rd Cir. 2004)(reasoning level two does not contradict limitation to simple, routine, repetitive work); *Harrington v. Astrue*, No. 07-1330-JM, 2009 WL 102689 at *2 (S.D. Cal. Jan. 14, 2009) (simple, repetitive work is consistent with the definition of GED reasoning level two); *Koch v. Astrue*, No. 08-609-PK, 2009 WL 1743680 at *17 (D. Or. June 15, 2009) (level two reasoning is consistent with simple, routine tasks); *Meissl v. Barnhart*, 403 F. Supp. 981, 984 (C.D. Cal. 2005).(same).

Second, Whitlock argues the ALJ erred by failing to ask the VE if the evidence he provided conflicted with the information in the DOT. If testimony provided by a VE conflicts with the work information in the DOT, the ALJ must resolve the conflict before relying on the testimony to find

11 - FINDINGS AND RECOMMENDATION

that a claimant is not disabled. The ALJ must explain how the conflict was resolved. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *4. The ALJ was not compelled to resolve any conflict here, however, because reasoning level 2 is consistent with Whitlock's ability to carry out simple instructions of no more than two steps.

Third, Whitlock argues the ALJ elicited testimony from the VE based on hypothetical assumptions that did not reflect all of her functional limitations. The ALJ considered all the evidence and reached an RFC assessment based on the limitations supported by the record as a whole. The ALJ was not required to incorporate additional limitations he found unsupported by the record. *Osenbrock,* 240 F.3d at 1163-65; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989). The ALJ elicited testimony from the VE based on the RFC assessment and properly relied on the VE's testimony because the hypothetical assumptions "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). Whitman's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

## **RECOMMENDATION**

For the reasons set forth above, the Commissioner's decision should be AFFIRMED.

///

///

///

///

///

///

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

DATED this 21st day of June, 2011.

John V. Acosta
United States Magistrate Judge